MANUEL BORRÁS ROSADO, ET AL., Plaintiffs and Appellants, v. CATALINA DEL CARMEN MENÉNDEZ SANTANA, ET AL., Defendants and Appellees.

No. 7739. Argued May 11, 1939.—Decided July 19, 1939.

*Ulpiano Crespo, Jr.,* for appellants. *Félix Santoni,* for appellees.

312

Mr. Chief Justice Del Toro delivered the opinion of the Court.

Certain nephews to whom their uncle Antonio Borrás Iguina, a resident of Arecibo, had left part of his property in a will which he executed on January 29, 1930, filed this action at the time of his death, June 4, 1933, requesting the annulment of another will executed by him on February 5, 1932, which was in force when he died, and on which he designated as his sole and universal heir his wife, the defendant Catalina del Carmen Menéndez Santana.

They alleged as grounds for the nullity that due to a serious organic illness, the mental faculties of their uncle had weakened in such a way that he had become submitted to the control of his wife who shrewdly, and knowing it to be a falsity, led him to believe that the plaintiffs were his enemies, thus obtaining the revocation of a will he had executed in their favor.

The defendant answered denying the averments of the complaint which were prejudicial, and upholding the validity of the will executed in 1932.

The case was heard. Both parties submitted their evidence and the court, based on the result of the same, which it weighed in the light of the law in force on the matter, entered judgment dismissing the complaint.

The plaintiffs appealed, assigning as a single error in their brief the one committed in their opinion by the lower court upon weighing the evidence.

██ We have read the evidence and we entirely agree with the appraisal of the same made by the trial judge in his opinion. It reads:

"Assuming that the plaintiffs had a legal interest to request the annulment of the last will executed by Mr. Borrás, and as they are not heirs by force of law, they would have to show, in accordance with Sections 622 and 636 of the Civil Code, any of the following grounds: deceit, fraud, violence or lack of the essential requisites in the execution of the will.

"(1) The complaint refers to cunning, suggestions, undue pressure, usurpation of rights and other similar conclusions, but despite the great number of phrases used to show in theory a selfish and fraudulent purpose on the part of the wife, no specific facts are alleged to show deceit, the manner in which violence was done or the material means of the fraud. Neither is there any averment as to the want of essential requisites in the execution of the will.

"The pressure exerted on the testator, alleged by plaintiffs, is relied upon the great physical and mental weakness which the former suffered on account of his illness; yet, the expert witness which they presented to justify the fundamental issue of their complaint, testified that the intellectual and mental faculties of Borrás, were never affected by his sickness, neither after nor before the date of the will. In a similar manner three physicians, who assisted Mr. Borrás, testified, affirming that the deceased retained his character and will, notwithstanding the illness which he suffered. Different documents executed by Borrás after the will were introduced in evidence, among which there is one where plaintiffs appear and two deeds executed before the same lawyer who now represents them. The statements made by two witnesses to the effect that Borrás, changed his mind from one day to the other at the time when he was sick, were so unconvincing and unimportant that they cannot be considered as showing that the testator suffered from any abnormality of his intellectual faculties, more so after the categoric testimony of the expert witnesses for both parties.

"(2) The concept of deceit, fraud or violence in the execution of wills, referred to in Section 622 of the Civil Code, implies the action by the testator under the pressure of fright or the influence of deceit, which oblige him to submit to a foreign will or to change his own in regard to the designation or heirs. It may be accepted that within this scope there may be included those cases where, taking advantage of the extreme weakness of a person seriously ill, his mind is influenced and his will overpowered, but in order to request the annulment of a will in such cases it is necessary to furnish the trial judge with a strong and coetaneous evidence that directly connects the execution of the designation with facts of the action exerted to obtain its execution. It is not possible to act on suppositions or on the mere fact that the testator was sick at the time of the execution of the will, as the majority of wills are executed at a time when the respective testators are ill.

"The only evidence offered by plaintiffs to show that the defendant Catalina Menéndez exerted pressure on her husband so that

he would execute a will in her favor and revoke a prior one, consists of her isolated statements which were denied under oath, and which are so out of place in the manner and time alleged that they could not convince us, and which would show, in the last instance, an unfriendly attitude between both families due to plaintiffs, demands while their uncle was ill, in order to hastily obtain the assignments of the parcels of lands which are the object of the deed marked as Exhibit D of plaintiffs.

"To decide whether this was what bothered the sick old man or if he believed that he was acting more sensibly in leaving the inheritance to his wife, constitutes very personal considerations in which we should not and we do not wish to intervene.

"Even assuming that the affable, patient and affectionate treatment by the wife, acknowledge on the stand by one of the plaintiffs, should have pleased the testator in such a way that as a consequence of that attitude there was formed in his mind the idea of designating her as his sole and universal heir, forgetting his nephews, we would have no legal reasons to annul the will, in accordance with the statute, unless the legal portion of one of the heirs by force of law should be injured."

We also agree with the citations of law and their construction and application to the facts of the case which are contained in the opinion.

Furthermore, we believe that the evidence clearly shows the reason entertained by the testator in order to change his will.

The plaintiffs themselves placed upon the stand the widow of their uncle, the defendant Menéndez Santana. From the summary of the testimony of said witness made by counsel for plaintiffs in his brief, we quote the following:

". . . . That her husband Antonio Borrás, when bothered became seriously ill, that the sons of her brother in law, Miguel Borrás, came to him to discuss a transaction as to the assignment of certain deeds which appeared in favor of Antonio Borrás and demanded that he should make the assignment of said deeds and upon realizing that on account of his illness he did not take any steps and delayed himself, his nephews again came to him and demanded the deed and as a consequence thereof he spent a restless night, and when Borrás suggested to his nephews that they speak to his lawyer, the nephews

answered that they had a lawyer whom they would bring to executed the assignment of the deed, and that disturbed him greatly, and as he was ill and not being able to find lawyer Santoni, he met with lawyer Cadilla and they came to an agreement and he assigned the deed to them.''

And from that part of the testimony transcribed *verbatim* in the same brief, we copy the following:

''Q.—How do you explain the fact that without having been offended they withdrew?—That is what I say. They realized that they had offended him and he remained aggrieved; and more so, after executing the second will he said to me: 'I have done this because if my nephews have mistrusted me, they whom I have always considered, what shall become of you in case that you should survive me?' ''.

Referring to the incident, the witness for the party defendant, Jaime Balseiro, testified in answer to questions of his counsel Mr. Santoni:

''Q.—Did the witness know Antonio Borrás?—Yes sir . . . Q.— Did Mr. Antonio Borrás go during any day of the month of January 1932 to the witness to talk about a deed which was requested of him by some of his nephews Borrás Rosado?—Yes sir.—Q.—Please tell what happened then and there.—One afternoon, at 1:30 more or less, Plácido and Juan Borrás together with Antonio Borrás came to the office.—Q.—What office?—To your office, Félix Santoni, to execute the assignment of a property which they say belonged to Borrás, but as you were not there it was not possible to execute the deed, as you had to draw the contract.—Q.—Where was I?—In San Juan.— Q.—Did they talk about this?—He arrived there very disturbed, complaining about the way in which he had been treated by his nephews, he almost cried and said that they had treated him badly and that he did not expect such thing from them . . . Q.—And Don Antonio Borrás, was he angered on account of that?—Yes sir; he was angry with them, and after they left we remained talking about different things and then he said to me: I feel greatly hurt by those boys by the way they have treated me; that they should have mistrusted me, and he did not want then to treat his wife in the same manner in which they have treated him and that he wished to amend his will.''

And immediately following he stated, in answer to the questions of the counsel for plaintiffs:

"Q.—In that same place, and due to their quarrel, did he manifest his will?—His purpose to change his will.—Q.—Did he mention the wife—Yes sir; he mentioned her saying that he did not wish that the sons of M¹guel should do to her what they had done to him."

The testator did not have any heirs by force of law. Starting on the assumption that he was of a sound legal mind, he could change at any moment, if he wished it, his last will. It only depended on his will that his nephews herein plaintiffs, should inherit or not his property. His friendly attitude towards them led him to make them a party to the inheritance. He could revoke his will of 1930 and execute the one of 1932 without having to state any reason whatsoever and without there been anything to that effect. Consequently, the evidence is even stronger than the one needed by the trial judge to decide the issue in the manner in which he did, there not existing, as it does not exist, any conclusive evidence as to incapacity on the part of the testator or to the effect that the will was executed under violence, deceit or fraud.

Borrás' wife lived with him for thirty-seven years. They brought to their home his nephews and hers, and they took care of them and provided for their education. The lack of children itself made the spouses more dependent on each other, and the long illness of the husband, constantly assisted by his wife, made their union closer, more necessary, more intimate. What is unusual then, about the will in force at the time of his death? It was the logic determination of a just mind, especially so considering the experience which he had with his nephews, plaintiffs herein.

The judgment appealed from must be affirmed.

Mr. Justice Travieso took no part in the decision of this case.